UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, and THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE LOCAL 7 MARBLE INDUSTRY PENSION FUND, THE LOCAL 7 MARBLE INDUSTRY ANNUITY FUND, THE LOCAL 7 MARBLE INDUSTRY TRUST FUND, TRUSTEES OF THE MOSAIC AND TERRAZZO WELFARE, PENSION, ANNUITY, AND VACATION FUNDS, TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, and THE INTERNATIONAL MASONRY INSTITUTE,<br><br>                                                            Plaintiffs,<br><br>                        -against-<br><br>PORT MORRIS TILE & MARBLE CORP. and PORT MORRIS TILE & MARBLE LP,<br><br>                                                            Defendants. | 20 CV _____<br><br>**COMPLAINT** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to sections 502 and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132, 1145 ("ERISA"), and section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and other applicable law, to collect delinquent contributions to a group of employee benefit plans, and for related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and pursuant to 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper pursuant to 29 U.S.C. §§ 185(a) and 1132(e)(2).

## THE PARTIES

4. Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Tile Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Tile Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). The Tile Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

5. Plaintiffs Trustees of the Marble Industry Pension Fund, Marble Industry Annuity Fund, and Marble Industry Trust Fund (collectively, the "Marble Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA Act, 29 U.S.C. § 186(c)(5). The Marble Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). The Marble Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

6. Plaintiffs Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds (the "Terrazzo Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA 29 U.S.C. § 186(c). The Terrazzo Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and are administered at 45-34 Court Square, Long Island City, New York 11101.

7. Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund and International Masonry Institute (the "International Funds") are employer and employee

trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The International Funds are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3). The International Funds maintain their principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

8. Defendant Port Morris Tile & Marble Corp. ("Port Morris Corp.") is a corporation organized under the laws of the State of New York and authorized to do business in the State of New York. At relevant times, Port Morris Corp. was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

9. Defendant Port Morris Tile & Marble LP ("Port Morris LP") is a business organization organized under the laws of the State of Delaware and authorized to do business in the State of New York. At relevant times, Port Morris LP was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

## FACTS

**The Collective Bargaining Agreements**

10. The Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Tile Union") is a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the LMRA, 29 U.S.C. § 142.

11. The Marble Carvers, Cutters, and Setters Union, Local Union No. 7 of the International Union of Bricklayers and Allied Craftsman ("Marble Carvers Union" and the Marble Polishers and Restoration Finishers, Local No. 7 of the International Union of Bricklayers and Allied Craftsmen ("Marble Polisher Union, "collectively with Marble Carvers Union, the "Marble Union") are labor organizations within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and represent employees in an industry affecting commerce as defined in Section 502 of the LMRA, 29 U.S.C. § 142.

12. The Mosaic, Terrazzo, and Chemical Product Decorative Finishers Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity of the International Union of Bricklayers and Allied Craftworkers (the "Terrazzo Union") is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the LMRA, 29 U.S.C. § 142.

13. At all relevant times, Port Morris Corp. has been bound to a series of collective bargaining agreements between the Tile Union and the Greater New York and New Jersey Tile Contractors Association obligating it to remit benefit contributions to the Local 7 Tile Funds and the International Funds.

14. At all relevant times, Port Morris Corp. has been bound to a series of collective bargaining agreements between the Marble Union and the Marble Industry of New York, Inc. obligating it to remit benefit contributions to the Local 7 Marble Funds and the International Funds.

15. At all relevant times, Port Morris Corp. has been bound to a series of collective bargaining agreements between the Terrazzo Union and the Marble Terrazzo and Specialty Contractors Association, Inc. obligating it to remit benefit contributions to the Local 7 Terrazzo Funds and the International Funds.

16. At all times relevant hereto, Defendant Port Morris LP was party to collective bargaining agreements with the Tile Union (the "Tile CBAs").

17. At all times relevant hereto, Defendants Port Morris Corp. and Port Morris LP were party to, or manifested an intention to be bound by, collective bargaining agreements with the Tile Union (the "Tile CBAs").

18. At all times relevant hereto, Defendants Port Morris Corp., and Port Morris LP were a party to, or manifested an intention to be bound by, collective bargaining agreements with the Marble Union (the "Marble CBAs").

19. At all times relevant hereto, Defendants were a party to, or manifested an intention to be bound by, collective bargaining agreements with the Terrazzo Union (the "Terrazzo CBAs").

20. The Tile CBAs, the Marble CBAs, and the Terrazzo CBAs (collectively, "Union CBAs") required Defendants to remit contributions to the Funds in connection with all work performed in the trade and geographic jurisdiction of the respective Unions ("Covered Work").

21. The Union CBAs also required Defendants to make their books and records available to the respective Funds in order to verify the hours of Covered Work performed by their respective employees.

**Covered Work Performed by Port Morris Corp. and its**
**Failure to Remit  Corresponding Contributions to the Tile and Marble Funds**

22. Port Morris Corp. is a tile and marble installation contractor that was in business from 1904 until its sale in 2018.

23. At all relevant times, Port Morris Corp., and its affiliated company, Port Morris Restoration, was party to the Union CBAs obligating it to remit benefit contributions to the Funds for each hour of Covered Work performed by its employees.

24. From January 1, 2016 to December 31, 2018, Port Morris Corp., based on its

furnished hours of Covered Work under the Marble CBA and a review of its records by the Funds' auditors, was required to remit benefit contributions to the Marble Funds of $1,211,710.44.

25. Port Morris Corp. did not remit, and has not remitted, the contributions of $1,211,710.44 owed to the Marble Funds for its Covered Work under the Marble CBA from January 1, 2016 to December 31, 2018.

26. Under the terms of the Marble CBA and ERISA, because Port Morris Corp. is delinquent in its contributions to the Marble Funds, Port Morris Corp. is also liable for interest, liquidated damages, audit costs, and the Funds' attorneys' fees and costs arising from the delinquency to the Marble Funds for the period of January 1, 2016 to December 31, 2018.

27. From January 1, 2016 to December 31, 2018, Port Morris Corp., based on its furnished hours of Covered Work under the Tile CBA and a review of its records by the Funds' auditors, was required to remit benefit contributions to the Tile Funds of $1,196,050.16.

28. Port Morris Corp. did not remit, and has not remitted, the contributions of $1,196,050.16 owed to the Tile Funds for its Covered Work under the Tile CBA from January 1, 2016 to December 31, 2018.

29. Under the terms of the Tile CBA and ERISA, because Port Morris Corp. is delinquent in its contributions to the Funds, Port Morris Corp. is also liable for interest, liquidated damages, audit costs, and the Funds' attorneys' fees and costs arising from the delinquency to the Tile Funds for the period of January 1, 2016 to December 31, 2018.

**The Sale of Port Morris Corp. and the Creation of Port Morris LP**

30. In May 2018, the owner of Port Morris Corp. sold the business to Samfet, which is a stone supplier and project management firm located in Quebec, Canada.

31. After the sale, Port Morris LP was created with the same employees and managers

as Port Morris Corp., who perform the same type of work as when they were employed by Port Morris Corp. for the same customers as Port Morris Corp.

32. Port Morris LP is located in the same location as where Port Morris Corp. was located in the Bronx, New York.

33. Moreover, Port Morris LP holds itself out as a continuation of Port Morris Corp. For instance, on its LinkedIn page, Port Morris LP states that it has been in business since 1904 and identifies numerous projects that were performed by Port Morris Corp. as its own.

34. Port Morris LP also signed CBAs with the same Unions as Port Morris Corp.

35. Accordingly, there is substantial continuity in workforce, management, equipment, location, and customers between Port Morris LP and Port Morris Corp.

**Covered Work Performed by Port Morris LP and its
Failure to Remit  Corresponding Contributions to the Tile, Marble, and Terrazzo Funds**

36. Port Morris Corp. is a tile, marble, and terrazzo installation construction contractor.

37. From February 20, 2018 through March 31, 2019, Port Morris LP, based on its furnished hours of Covered Work under the Marble CBA and a review of its records by the Funds' auditors, was required to remit benefit contributions to the Marble Funds of $23,292.84.

38. Port Morris LP did not remit, and has not remitted, the contributions of $23,292.84 owed to the Marble Funds for its Covered Work under the Marble CBA from February 20, 2018 through March 31, 2019.

39. Under the terms of the Marble CBA and ERISA, because Port Morris LP is delinquent in its contributions to the Funds, Port Morris LP is also liable for interest, liquidated damages, audit costs, and the Funds' attorneys' fees and costs arising from the delinquency to the Marble Funds for the period of February 20, 2018 through March 31, 2019.

40. From February 20, 2018 through March 31, 2019, Port Morris LP, based on its

furnished hours of Covered Work under the Tile CBA and a review of its records by the Funds' auditors, was required to remit benefit contributions to the Tile Funds of $88,267.62.

41. Port Morris LP did not remit, and has not remitted, the contributions of $88,267.62 owed to the Tile Funds for its Covered Work under the Tile CBA from February 20, 2018 through March 31, 2019.

42. Under the terms of the Tile CBA and ERISA, because Port Morris LP is delinquent in its contributions to the Funds, Port Morris LP is also liable for interest, liquidated damages, audit costs, and the Funds' attorneys' fees and costs arising from the delinquency to the Tile Funds for the period of February 20, 2018 through March 31, 2019.

43. From February 20, 2018 through March 31, 2019, Port Morris LP, based on its furnished hours of Covered Work under the Terrazzo CBA and a review of its records by the Funds' auditors, was required to remit benefit contributions to the Terrazzo Funds of $8,194.84.

44. Port Morris LP did not remit, and has not remitted, the contributions of $8,194.84. owed to the Terrazzo Funds for its Covered Work under the Terrazzo CBA from February 20, 2018 through March 31, 2019.

45. Under the terms of the Terrazzo CBA and ERISA, because Port Morris LP is delinquent in its contributions to the Terrazzo Funds, Port Morris LP is also liable for interest, liquidated damages, audit costs, and the Funds' attorneys' fees and costs arising from the delinquency to the Terrazzo Funds for the period of February 20, 2018 through March 31, 2019.

46. In September 2019, Port Morris LP, again, started to fall behind on its contributions to the Funds.

47. Representatives of the Unions and the Funds contacted Port Morris LP's customers, which consist of general contractors that oversee construction projects where Port Morris LP

performs Covered Work, including, AECOM Tishman, Lendlease Corporation, The Related Companies, I-Grace Co., and CM&B, Inc.

48. Port Morris LP, according to its customer, AECOM Tishman, arranged to have the owner of the construction project at Riverside Boulevard pay Port Morris LP's weekly requisitions directly to Port Morris LP for the purpose of facilitating Port Morris LP's prompt payment of its contribution obligation to the Funds, leaving the general contractor with no control over such requisitions.

49. Port Morris LP did not use those requisitions from the owner to pay the Funds.

50. Port Morris continued to work on construction projects, performing Covered Work, through at least January 20, 2020 without any contributions being remitted to the Funds by Port Morris LP from September 2019 through January 2020.

51. Based on the hours of Covered Work reported by Port Morris LP to the Tile Union, the Marble Union, to the Terrazzo Union, and to the Funds for the period of August 2019 through January 2020, Port Morris LP owes the Funds delinquent contributions of at least $2,436,384.79 for its Covered Work on construction projects for AECOM Tishman, Lendlease Corporation, The Related Companies, I-Grace Co., and CM&B, Inc., including, but not limited to, those located at Riverside Boulevard, 35 Hudson Yards, Hudson Yards 15 Tower D, 250 South Street, MoMA Tower, 432 Park Avenue, Cipriani, and 138 Willoughby, with delinquent contributions of $885,423.78 owed to the Tile Funds, $1,487,883.46 owed to the Marble Funds, and $63,077.55.

52. Port Morris LP has not remitted any contributions to the Funds for the period of August 2019 through January 2020, despite its receipt of weekly requisitions from the owners of the above-listed projects or the general contractors for the above-listed projects.

53. Under the terms of the Union CBAs, the Funds' policy for collecting delinquent

contributions, and ERISA, Port Morris LP is also liable for interest, liquidated damages, audit costs, and the Funds' attorneys' fees and costs arising from the delinquency to the Funds for the period of August 2019 through January 2020.

### PLAINTIFFS' FIRST CLAIM FOR RELIEF
(Violation of ERISA by Defendants)

54. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

56. At all relevant times, Defendants were party to the Union CBAs.

57. The Union CBAs required Defendants to make specified hourly contributions to the Funds in connection with all Covered Work.

58. Defendant violated section 515 of ERISA by failing to make required contributions to the Funds for the periods of (1) January 1, 2016 through March 31, 2019 and (2) September 1, 2019 through January 20, 2020 in the amount of at least $4,844,145.39 in delinquent contributions, plus any additional delinquent benefits contributions identified during the course of this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in collecting these amounts.

59. Accordingly, pursuant to sections 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, the Union CBAs, and the documents and instruments governing the Funds, Defendants are liable to the Funds in an amount equal to at least $4,844,145.39 in delinquent contributions, plus

any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs, including audit costs, incurred by the Funds in collecting these amounts.

### PLAINTIFFS' SECOND CLAIM FOR RELIEF
(Violation of the LMRA by Defendants)

60. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61. Section 301 of the LMRA, 29 U.S.C. § 185, allows Plaintiffs to file an action against Defendants for violations of the Union CBAs.

62. At all relevant times, Defendants were bound the Union CBAs.

63. The Union CBAs required Defendants to make specified hourly contributions to the Funds in connection with all Covered Work.

64. The Union CBAs required Defendants to submit reports periodically the Funds detailing the amount of Covered Work performed.

65. Defendants violated the terms of the Union CBAs by failing to make required contributions to the Funds for the periods of (1) January 1, 2016 through March 31, 2019 and (2) September 1, 2019 through January 20, 2020 in the amount of at least $4,844,145.39 in delinquent contributions, plus any additional delinquent benefits contributions identified during the course of this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in collecting these amounts.

66. Accordingly, Defendant is liable to the Funds for contributions in the amount of at least $4,844,145.39 in delinquent contributions, plus any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent

(20%) of the principal owed, audit costs, and attorneys' fees and costs incurred by the Funds in this suit.

      **WHEREFORE,** Plaintiffs respectfully request that this Court:

A)    On Plaintiffs' First Claim for Relief, issue an order awarding judgment to Plaintiffs against Defendants for Defendants' violations under ERISA in the amount equal to Defendants' delinquent contributions to Plaintiffs, which equals at least $4,844,145.39, plus any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in collecting these amounts, and pre-judgment interest and post-judgment interest;

B)    On Plaintiffs' Second Claim for Relief, issue an order awarding judgment to Plaintiffs against Defendants for Defendants' violations under LMRA in the amount equal to Defendants' delinquent contributions to Plaintiffs, which equals at least $4,844,145.39, plus any additional delinquent benefits contributions identified through this litigation, interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in collecting these amounts, and pre-judgment interest and post-judgment interest

C)    Award Plaintiffs other and further relief as the Court may deem just and proper.

Dated: New York, New York  
       March 10, 2020

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By:     /s/      
Charles R. Virginia, III, Esq.  
John M. Harras, Esq.  
40 Broad Street, 7th Floor  
New York, New York 10004  
(212) 943-9080  
jharras@vandallp.com

*Attorneys for Plaintiffs*

-13-