UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 20-CV-1294 (ENV) (RER)
_____

TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, THE LOCAL 7 TILE ANNUITY FUND, AND THE TILE LAYERS LOCAL UNION 52 PENSION FUND, *ET AL.*,

Plaintiffs,

VERSUS

PORT MORRIS TILE & MARBLE CORP. AND PORT MORRIS TILE & MARBLE LP,

Defendants.

_____

**REPORT & RECOMMENDATION**

June 7, 2021
_____

TO THE HONORABLE JUDGE ERIC N. VITALIANO,
SENIOR UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, the Local 7 Tile Industry Annuity Fund, and the Tile Layers Local Union 52 Pension Fund ("Tile Funds"); Trustees of the Local 7 Marble Industry Pension Fund, the Local 7 Marble Industry Annuity Fund, and the Local 7 Marble Industry Trust Fund ("Marble Funds"); Trustees Of The Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds ("Terrazzo Funds");[1] and Trustees of the Bricklayers & Trowel Trades International Pension Fund and the International Masonry Institute (International Funds") (collectively, "Plaintiffs" or "Trustees") commenced this action against defendants Port

---

[1] The Terrazzo Funds do not assert a claim against Port Morris Tile & Marble Corp. (Dkt. No. 39 ("Pl.'s Mem.") at 3 n.1).

1

Morris Tile & Marble Corp. ("Port Morris Corp.")[2] and Port Morris Tile & Marble LP ("Port Morris LP") pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 9 U.S.C. §§ 1132(a)(3), 1145; and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. (Dkt. No. 1 ("Compl.") ¶ 1). Presently before the Court are (1) the Trustees's motion for default judgment against Port Morris Corp., (Dkt. Nos. 34–39); and (2) Port Morris Corp.'s motion to set aside entry of default, (Dkt. No. 47). For the reasons stated below, I respectfully recommend that Port Morris Corp.'s motion to set aside entry of default be granted and that the Trustees's motion for default judgment be denied.

## BACKGROUND

At the outset, this appeared to be a rather straightforward ERISA and LMRA action to recover delinquent contributions to various multi-employer labor management trust funds Defendants allegedly owed pursuant to collective bargaining agreements. (Compl. at ¶¶ 6–17).[3] Defendants' contentious history with each other, however, complicates the matter.

### A. Procedural History

The Trustees filed the Complaint against both Defendants on March 10, 2020. Since then, the Trustees and counsel of record for Port Morris LP, Becker Glynn Muffly Chassin & Hosinski LLP ("Becker Glynn"), have engaged in extensive settlement negotiations. (*See, e.g.*, Dkt. Nos. 58 at 16, 60 at 3). The Trustees believed that Becker Glynn represented both Defendants, (Dkt. No. 57

---

[2] Port Morris Corp. changed its name to Tiny 1, Ltd. in April 2019. (Dkt. No. 47-1 ("DeLazzero Decl.") ¶ 1; N.Y. SEC'Y OF STATE, https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_SEARCH_ENTRY (select "all" from name type dropdown; then search for "Port Morris Tile & Marble, Cop." or "Tiny 1;" select entity name) (last visited June 4, 2021) [hereinafter N.Y. SEC'Y OF STATE]. To avoid confusion the Court will use "Port Morris Corp." to refer to the Defendant entity formerly known as Port Morris Corp. and now known as Tiny 1, Ltd.

[3] This case was originally assigned to Magistrate Judge James Orenstein. (Dkt. Entry dated 3/10/2020). The case was reassigned to me on November 17, 2020, after the Trustees's motion for default judgment and Port Morris Corp.'s motion to set aside entry of default had already been filed. (Dkt. Entry dated 11/17/2020).

2

("Harras Decl.") ¶ 15; Dkt. No. 58 ("Pls.' Opp'n") at 3–5; *see* Dkt. No. 47-2 ("Smith Decl.") ¶ 6–9); however, Defendants insist that Becker Glynn only represented Port Morris LP, and never Port Morris Corp.,[4] (DeLazzero Decl. ¶ 13; Dkt. No. 48 ¶¶ 2–3; Dkt. No. 49 ¶ 4; LP's Mem. at 3; *see* Smith Decl. ¶ 7).[5]

After months of failed negotiations, (*see* Dkt. No. 8), Port Morris LP filed an Answer on July 31, 2020, including a counterclaim against the Trustees for overpayments made through the end of 2018. (Dkt. No. 22 ("LP's Answer")). Because Port Morris Corp. did not appear or otherwise respond to the Complaint, at the Trustees's request, the Clerk of the Court entered Port Morris Corp.'s default on October 7, 2020. (Dkt. No. 33). The Trustees filed the pending motion for default judgment two days later. (Dkt. Nos. 34–39).

Port Morris Corp. learned of this case and the pending motion for default judgment on October 5, 2020 when Becker Glynn emailed the filing to Port Morris Corp.'s counsel.[6] (DeLazzero Decl. ¶ 12; Smith Decl. ¶ 3; Dkt. No. 47-3). Port Morris Corp. was previously unaware of this action because it no longer operates from the address on file with the New York secretary of State—1285 Oakpoint Avenue, Bronx, New York ("the Bronx address")— to which service of the Summons and Complaint was executed.[7] (DeLazzero Decl. ¶ 11).

---

[4] These dynamics inform a proposed third-party claim that Port Morris Corp. now asserts against Becker Glynn and which Port Morris Corp. seeks to exclude. (Dkt. No. 63 at 1; Dkt. No. 60 ("LP's Mem.") at 1).

[5] John M. Harras ("Harras") is a partner at the law firm of Virginia and Ambinder, LLP, counsel of record for the Trustees. (Harras Decl. ¶ 1). Andrew A. Smith ("Smith") is senior counsel at the law firm of Kennedy Berg LLP, counsel of record for Port Morris Corp. (Smith Decl. ¶1). Vincent DeLazzero ("DeLazzero") is the owner and president of Port Morris Corp. (DeLazzero Decl. ¶ 1).

[6] Becker Glynn apparently did not send Port Morris Corp. courtesy notice of the Complaint or an earlier motion for default judgment that was withdrawn when settlement negotiations resumed. (*See* Dkt. Nos. 13, 20).

[7] The Trustees served the Summons and Complaint on Port Morris Corp., doing business as Tiny 1, Ltd., pursuant to Section 306 of the New York Business Corporation Law. (Dkt. No. 6). Port Morris Corp. does not dispute that service

Within nine days of learning of this action, counsel for Port Morris Corp. filed their appearance. (Dkt. No. 42; Smith Decl. ¶ 12). With the Trustees's consent, Port Morris Corp. also requested extensions of time to respond to the motion for default judgment. (Dkt. Nos. 43–44). Counsel for Port Morris Corp. quickly contacted Port Morris LP to obtain the relevant records. (Smith Decl. ¶¶ 10, 13; Dkt. No. 47-5 at 3–4 (letter dated 10/14/2020); Dkt. No. 47-6 at 3 (letter dated 10/20/2020)).

On November 9, 2020, one month after the Trustees filed the pending motion for default judgment and just over one month after Port Morris Corp. learned of this action, Port Morris Corp. filed a proposed answer and cross motion to set aside the Clerk's entry of default. (Dkt. Nos. 46–47). Port Morris Corp.'s proposed answer includes a counterclaim for overpayments, a crossclaim against Port Morris LP for breach of contract, and a third-party claim against Becker Glynn.[8] (Dkt. No. 46 at 10).

### B. The Trustees's Motion for Default Judgment Against Port Morris Corp.

Port Morris Corp. was a supplier of stone and tile in New York and Boston. (Dkt. No. 63-1 ("Corp.'s Answer") at 13 ¶ 10). Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and

---

was proper. (Dkt. No. 47 at 6; Corp.'s Answer at 9). Port Morris Corp. alleges that it ceased its operations at the Bronx address in September 2017. (DeLazzero Decl. ¶ 11). At some point, it moved its operations to Florida. (*Id.*). However, the Bronx address remains the only address on file with the New York Secretary of State for both Port Morris Corp. and Tiny 1, Ltd. N.Y. SEC'Y OF STATE.

[8] Port Morris Corp. has since filed an amended proposed answer, including third-party claims against Becker Glynn for malpractice, breach of fiduciary duty, and fraudulent concealment. (Corp.'s Answer).

4

employee benefit plans within in the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). (Compl. ¶¶ 4–7).

Port Morris Corp. was a party to, or manifested an intent to be bound by, collective bargaining agreements ("CBA") with each of the following labor organizations: the Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Tile Union"); and the Marble Carvers, Cutters, and Setters Union, Local Union No. 7 of the International Union of Bricklayers and Allied Craftsman ("Marble Carvers Union") and the Marble Polishers and Restoration Finishers, Local No. 7 of the International Union of Bricklayers and Allied Craftsmen ("Marble Polisher Union," collectively with Marble Carvers Union, the "Marble Union").[9] (Compl. ¶¶ 10–11, 17–18; *see* Corp.'s Answer at 3 ¶ 13, 25 ¶ 74). Each CBA required Port Morris Corp. to remit benefit contributions to the Tile Fund and Marble Funds for all covered work performed by the respective union employees. (Compl. ¶¶ 13–14, 20–21; Corp.'s Answer at 3 ¶ 13, 26 ¶ 74). The Trustees allege that Port Morris Corp. failed to make required benefit contributions between January 1, 2016 and December 31, 2018. (Pls.' Mem. at 5). Port Morris Corp. asserts that Plaintiffs received approximately $820,000 in overpayments during that period. (Corp.'s Answer at 27 ¶¶ 87–88).

### C. Port Morris Corp. and Port Morris LP's History

Defendants share exceedingly similar names and a complicated contractual history. The necessary background for their complicated relationship follows:

---

[9] Port Morris Corp. was also bound to a series of collective bargaining agreements between the Tile Union and the Greater New York and New Jersey Tile Contractors Association obligating it to remit benefit contributions to the Tile Funds and the International Fund, as well as a series of collective bargaining agreements between the Marble Union and the Marble Industry of New York, Inc. (Compl. ¶¶ 13–14).

5

DeLazzero, owner of Port Morris Corp., needed to sell his business due to debilitating health complications. (DeLazzero Decl. ¶¶ 1, 3; Dkt. No. 47-8 ("Corp.'s Mem.") at 5). Port Morris Corp. alleges that in September 2015, it entered into an agreement to sell certain jobs to a buyer led by Georges Berberi ("Berberi"), principal of Samfet Marble, Inc. ("Samfet"), a Canadian based stone and marble company. (DeLazzero Decl. ¶ 5; Corp.'s Mem. at 5). Port Morris Corp. further contends that from October 2015 through January 12, 2018, Samfet took physical possession and operational control of Port Morris Corp. in anticipation of the sale.[10] (DeLazzero Decl. ¶ 6; Corp.'s Mem. at 5; Corp.'s Answer at 10 ¶¶ 3–4).

On January 12, 2018, Port Morris Corp. finally closed on the sale of substantially all of its assets, including its name, to Samfet. (Corp.'s Mem. at 6; Corp.'s Answer at 10 ¶ 1; Compl. ¶ 30; *see* LP's Answer at 9 ¶ 6). On the closing date, Port Morris Corp. and Samfet also allegedly executed a Global Services Subcontractor Agreement stating that for a 150-day transition period from the date of execution, Samfet was responsible for Port Morris Corp.'s payroll, health insurance and other employee obligations although Port Morris Corp. remained the primary employer in name. (DeLazzero Decl. ¶ 15; Corp.'s Mem. at 6).

Port Morris LP was then created and began operations in May 2018 "with the same employees and managers as Port Morris Corp., who perform the same type of work as when they were employed by Port Morris Corp. for the same customers as Port Morris Corp." (Compl. ¶¶ 30–31; *see also* LP's Answer at 9 ¶ 6). The Trustees further allege that Port Morris LP "holds itself out as

---

[10] Samfet's conduct during this period is central to an action Port Morris Corp. filed in the Supreme Court of New York, County of New York on May 25, 2020, styled, *Tiny 1, Ltd., et al. v. Samfet Marble, Inc., et al.*, 651860/2020 ("the State Court Action"). (DeLazzero Decl. ¶ 8; Smith Decl. ¶ 1; Corp.'s Mem. at 5). Both parties are represented in that matter by the same counsel appearing here. (LP's Mem. at 3; Corp.'s Mem. at 10–11).

a continuation of Port Morris Corp." and signed CBAs with the same unions as Port Morris Corp. (Compl. ¶¶ 33–34).

## DISCUSSION

### I. Legal Standard

The Federal Rules of Civil Procedure establish a two-step process for entry of a default judgment. *See* FED. R. CIV. P. 55. The first step is for the clerk of the court to enter default. FED. R. CIV. P. 55(a); *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The second step requires a plaintiff to "apply to the court for entry of a default judgment." FED. R. CIV. P. 55(b)(2); *see also Priestly*, 647 F.3d at 505. If the defendant does not appear or move to set aside entry of default in accordance with Rule 55(c), a default judgment may then be entered. *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 347 (E.D.N.Y. 2009) (adopting R. & R.).

When a default is entered, the defendant is presumed to admit all well-pleaded allegations in the complaint relating to liability. *La Barbera*, 666 F. Supp. 2d at 348 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Nevertheless, a plaintiff must demonstrate that these well-pleaded facts establish a defendant's liability. *Said v. SBS Elecs.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) (collecting cases), *R & R adopted as modified by* 2010 WL 1287080 (Mar. 31, 2010). Thereafter, a plaintiff may then be required to prove damages at an evidentiary hearing, at which the defendant is able to contest damages. *See La Barbera*, 666 F. Supp. 2d at 349. If damages can be mathematically calculated, however, or if there are detailed affidavits and documentary evidence as to what damages should be, then an evidentiary hearing may not be required. *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

7

After the clerk of the court has entered default in accordance with Rule 55(a), a party in default may move to set aside the entry of default upon a showing of "good cause." FED. R. CIV. P. 55(c). While Rule 55(c) does not define "good cause," courts generally apply the same criteria for a motion to set aside an entry of default as a Rule 60(b) motion to vacate a default judgment: (1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense; (3) whether, and to what extent vacating entry of default will prejudice the non-defaulting party. *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)); *see also Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the . . . standard for setting aside a default judgment . . . ."). These factors should be balanced and not applied disjunctively. *Info. Sys. and Networks Corp. v. U.S.*, 994 F.2d 792, 796 (Fed. Cir. 1993) (citing, *inter alia*, *Meehan*, 652 F.2d at 277). Additionally, courts may weigh other "relevant equitable factors," such as "whether the failure to follow a rule of procedure was a mistake made in good faith[,] whether the entry of default would bring about a harsh or unfair result," *Enron Oil,* 10 F.3d at 96 (citation omitted), or "whether the entry of default would lead . . . to the entry of a large money judgment," *Sony v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986) (collecting cases). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party," and the factors should be construed generously. *Enron Oil*, 10 F.3d at 96; *see also State St. Bank & Trust Co. v. Inversiones Errazuriz Ltd.*, 374 F.3d 158, 168 (2d Cir. 2004).

## II. Entry of Default Should be Vacated

On balance, the good cause criteria weigh in favor of setting aside the entry of default against Port Morris Corp.

### A. Willfulness

In the context of a default, willfulness "refer[s] to conduct that is more than merely negligent or careless, but is instead egregious and not satisfactorily explained." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (internal quotation marks, alteration, and citation omitted) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Default is willful where defendants demonstrate "a clear pattern of willful and deliberate disregard for the litigation." *Id.* at 187. This standard is satisfied where a defendant "received the complaint, the court's orders, [and] the notice of default judgment," but does not respond, and does not show "that his non-compliance was due to circumstances beyond his control." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

Port Morris Corp. candidly admits that it did not receive notice of this lawsuit and the entry of default due to its failure to keep current its service address with the New York Secretary of State.[11] (Corp.'s Mem. at 6–7; DeLazzero Decl. at ¶¶ 10–11). That failure alone does not amount to willfulness. *See, e.g.*, *LG Capital Funding, LLC v. ON4 Communs., Inc.*, No. 16-CV-6943 (ENV) (RER), 2018 WL 5020170, at *4 (E.D.N.Y. Jan. 17, 2018), *R & R adopted in relevant part by* 2018 WL 4583486 (Sept. 25, 2018). Rather, at most, it amounts to gross negligence. *See id.* at *3–

---

[11] "[I]t is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process." *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 CIV. 1674 (RJS), 2013 WL 5405699, at *4 (S.D.N.Y. Sept. 23, 2013) (quoting *Cedeno v. Wimbledon Bldg. Corp.*, 615 N.Y.S.2d 40, 40 (N.Y. App. Div. 1994)).

9

4. While willful conduct alone is enough to deny a motion to vacate entry of default, gross negligence is not. *See American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996); *Nikolaeva v. Home Attendant Servs. of Hyde Park,* No. 15-CV-6977 (NGG) (RER), 2018 WL 6984837, at *2 (E.D.N.Y. Nov. 16, 2018) ("Because the central purpose of a default judgment is to protect parties and the courts from harassment and purposeful delay, willfulness must involve more than carelessness or negligence by the defaulting party." (citations omitted)), *R & R adopted by* 2019 WL 147721 (Jan. 9, 2019).

Port Morris Corp. asserts that failure to update its address with Secretary of State was "certainly inadvertent."[12] (DeLazzero Decl. ¶ 11; Corp.'s Mem. at 3). The Trustees offer no evidence that Port Morris Corp. intentionally avoided notice or strategically refused to answer the complaint. Nothing in the record suggests that Port Morris Corp. received the Summons and Complaint or that there was any reason for Port Morris Corp. to suspect that the Trustees or another entity had a claim against it. Thus, while failure to update its address, especially when it registered under a new name, "may have been careless, or even negligent, it was clearly not willful." *Courchevel 1850 LLC v. Espinosa*, No. 17 Civ. 799 (VB), 2018 WL 3462519, at *4 (S.D.N.Y. July 17, 2018).

"[T]he relevant inquiry for determining willfulness is the defaulting party's actions after it became aware of the existence of the litigation or entry of default." *In re FKF 3, LLC*, 501 B.R. 491, 502 (S.D.N.Y. 2013) (collecting cases); *see also Courchevel*, 2018 WL 3462519, at *4. Thus, timeliness further informs the Court's understanding of whether the default was willful. *See, e.g.*, *Lopez v. Mohammed,* No. 14-CV-4443 (PKC) (MDG), 2017 WL 4277154, at *10 (E.D.N.Y. Sept.

---

[12] Port Morris Corp. also suggests that Berberi or Samfet had a responsibility to update Port Morris Corp.'s address with the Secretary of State after taking physical possession of the property at the Bronx address. (DeLazzero Decl. at ¶ 11).

10

26, 2017) (finding willfulness from one-month delay after notice of default judgment together with two-month delay after filing notice of appeal).

Port Morris Corp., after receiving notice of the suit from Becker Glynn on October 5, 2020, swiftly joined the litigation. (Corp.'s Mem. at 11). Counsel for Port Morris Corp. filed an appearance on October 14, 2020. (Dkt. No. 42). Port Morris Corp. then filed a proposed answer to the complaint and cross motion to set aside default on November 9, 2020—barely one month after it learned of this suit. (Dkt. Nos. 46–47). During that time, Port Morris Corp. communicated with the Trustees and Port Morris LP to learn the nature of the claims and gain access to the relevant business records. (Smith Decl. ¶¶ 5–15). This conduct weighs in favor of granting the motion to set aside the entry of default.

### B. Meritorious Defense

"Whether a defense is meritorious is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *State St. Bank*, 374 F.3d at 167 (quotation marks and citation omitted). "[A] defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001). This standard is not demanding, and defendants are not required to show a likelihood of success on their defense; however, they must "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013) (citation omitted). The defaulting party must make a showing that "warrant[s] further briefing and consideration." *Bldg. Serv. 32B-J Health Fund v. Impact Real*

11

*Estate Mgmt.*, 00 Civ. 1343 (RWS), 2000 U.S. Dist. LEXIS 15065, at *4 (S.D.N.Y. Oct. 16, 2000); *see also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (citation omitted) ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make.").

Port Morris Corp. asserts that it has two meritorious defenses to the Trustees's claims. First, Port Morris Corp. contends that it has evidence that it *overpaid* its required contributions by nearly $820,000. (Corp.'s Mem. at 14; Corp.'s Answer at 10 ¶ 1). This contention is corroborated, at least in part, by the fact that the Trustees significantly reduced their ad damnum after reviewing "evidence from Port Morris Corp." (Dkt. No. 37 ¶ 9; LP's Mem. at 5 n.2). Further Port Morris Corp. has submitted an analysis detailing the payments made by Port Morris Corp. to the Trustees. (Smith Decl. ¶ 15; Dkt. No. 47-7). That the Trustees were properly paid, supported by records showing overpayments, constitutes a meritorious defense.[13] *See, e.g.*, *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014) (Perishable Agricultural Commodities Act) ("[I]n the context of a motion to vacate a default, a defense that the parties were properly paid constitutes a 'meritorious defense.'" (citation omitted)); *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010) (Fair Labor Standards Act) ("Defendant has put forth on its face a meritorious defense, though such defense is yet untested.").

Second, Port Morris Corp. raises a crossclaim against Port Morris LP for breach of subcontract to manage Port Morris Corp.'s affairs. (Corp.'s Mem. at 14; Corp.'s Answer at 27–28 ¶¶ 91–97). Neither the Trustees nor Port Morris LP dispute that Port Morris Corp. may bring a crossclaim

---

[13] An employer is entitled to "a refund for overpayments to a fund, . . . [on a showing]: (1) that the refund policy was arbitrary and capricious; (2) that the equities favor restitution; and (3) the effect of the claimed setoff on individual beneficiaries to whom the fund may have discharged financial responsibilities by reason of the overpayment." *Bldg. Serv. 32BJ Health Fund v. GCA Servs. Grp., Inc.*, 232 F. Supp. 3d 343, 352 (S.D.N.Y. 2017).

against Port Morris LP for underpayments made during the relevant time period. (LP's Mem. at 1; Pls.' Opp'n at 14–15). Thus, Port Morris Corp.'s crossclaim also constitutes a meritorious defense. *See Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 11-CV-115 (RJD) (VMS), 2016 U.S. Dist. LEXIS 102818, at *29 n.9 (E.D.N.Y. Aug. 3, 2016) ("Plaintiffs did not respond to this line of argument, and as such, the Court assumes, for purposes of this instant motion only, that Defendants offer a meritorious defense on this front."), *R & R adopted by* 2016 U.S. Dist. LEXIS 173713 (Dec. 15, 2016), *aff'd*, 707 Fed. Appx. 59 (2017); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. R & C Transit, Inc.*, 321 F.R.D. 60, 63 (E.D.N.Y. 2017) ("In effect, the Defendant claims that [third party] is responsible for the monies owed to the Plaintiffs. The Court finds that this is a sufficient showing at this juncture.").

These defenses would offer a complete defense if proven and raise serious questions as to the validity of the Trustees's allegations. Because Port Morris Corp.'s defenses warrant further consideration, this factor also weighs in favor of setting aside the default.

    C. <u>Prejudice</u>

Third, the Court cannot fathom any prejudice to the Trustees if entry of default were set aside. A party is prejudiced when its "ability to proceed [with its] case is impaired." *Walden v. Lorcom Techs., Inc.*, No. 05-CV-3600 (ARR) (RER), 2007 U.S. Dist. LEXIS 101365, at *10 (E.D.N.Y. Jan. 31, 2007), *R & R adopted by* 2007 U.S. Dist. LEXIS 101364 (Feb. 23, 2007); *see also Glob. Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013) (quoting *Murray Eng'g, P.C. v. Windermere Props. LLC*, 12 Civ. 52 (JPO), 2013 WL 1809637 at *5 (S.D.N.Y. Apr. 30, 2013)) ("[T]he 'requisite level of prejudice,' however, requires a showing of prejudice that 'cannot be rectified in the Court in another manner were the default to be vacated.'"), *aff'd in part, modified in part*, 612 F. App'x 11 (2d Cir. 2015). The Trustees must show that delay would prevent recovery

13

or would "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Glob. Gold*, 983 F. Supp. 2d at 388 (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Litigation expenses are not sufficient for a finding of prejudice, *Walden*, 2007 WL 608151, at *10, and neither is delay alone, *U.S. v. Chesir*, 862 F. Supp. 2d 286, 292 (E.D.N.Y. 2012) (citing *New York v. Green*, 420 F.3d 9, 110 (2d Cir. 2005)).

The Trustees based their claim of prejudice on the resources already expended to resolve this action by engaging in negotiation and discovery with Becker Glynn. (Pls.' Opp'n at 16). The Trustees also argue that Port Morris Corp.'s crossclaim against Port Morris LP would "overshadow" its claims and argues that the breach of subcontract claim is unrelated to this suit.[14] (*Id.*). Port Morris Corp. asserts its crossclaim only "to the extent [Port Morris LP] failed to make payments on union benefits" in the relevant period. (Corp.'s Answer at 28 ¶ 96). Defendants' contentious history with each other certainly complicates the matter; however, that this action is more complicated than the Trustees had hoped does not amount to legal prejudice, especially where the Trustees were aware of the subcontract at issue.[15] This factor weighs in favor of granting Port Morris Corp.'s motion. *See, e.g.*, *R & C Transit*, 321 F.R.D. at 63 ("The Plaintiffs are the ones who initiated this suit, and so clearly intended expending resources to litigate it.").

For the foregoing reasons, I find that Port Morris Corp. has established good cause to set aside the Clerk's entry of default. I respectfully recommend that Your Honor grant Port Morris Corp.'s motion.

---

[14] As discussed *infra*, Section IV, the Court agrees with the Trustees to the extent that they argue that the third-party claim against Becker Glynn is not appropriately joined to this action.

[15] The Trustees cite to the same subcontract to assert that they "reasonably relied" on Becker Glynn's representation of both Defendants. (Pls.' Opp'n at 16).

14

### III. Plaintiff's Motion for Default Judgment Should Be Denied

Given the recommendation that Port Morris Corp.'s motion to set aside entry of default be granted, it follows that the Trustees's motion for default judgment should be denied. *E.g., Wells Fargo Bank, N.A. v. Watts*, No. 16-CV-6919 (ENV) (RER), 2019 WL 3716190, * 1 (E.D.N.Y. Jan. 3, 2019) (recommending motion for default judgment be denied as moot where entry of default had been vacated), *R & R adopted by* 2019 WL 3714582 (Mar. 12, 2019). If, however, Your Honor disagrees with the recommendation as to Port Morris Corp.'s motion, I would recommend that the Trustees's motion be granted, but only with respect to liability. Thereafter, the matter should be referred to me for an inquest on damages.

I have carefully reviewed the Complaint and the Trustees's submissions in support of their motion for a default judgment. (Dkt. Nos. 1, 34–39). Those submissions establish Port Morris Corp.'s liability under section 515 of ERISA and section 301 of the LMRA. Section 515 of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 301 of the LMRA provides federal jurisdiction for suits involving the "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The Trustees allege that Port Morris Corp. entered into several collective bargaining agreements with unions under which it was obligated to make contributions to various ERISA plans, and that it failed to make such contributions. (Compl. ¶¶ 4–8, 10–15, 17–18, 20, 22–29). Port Morris Corp.'s actions, which would be deemed admitted were entry of default sustained, would thus violate 29 U.S.C. § 1145 and 29 U.S.C. § 185(a). *See, e.g., Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of*

*Operating Eng'rs, Loc. 15, 15A, 15C & 15D v. Coastal Env't Grp. Inc.*, No. 18-CV-5791 (LDH) (SJB), 2019 WL 5693916, at *5 (E.D.N.Y. Aug. 30, 2019), *R & R adopted* (Mar. 31, 2020); *Trs. of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.,* No. 16-CV-318 (SJ) (SJB), 2018 WL 4268907, at *3–4 (E.D.N.Y. Aug. 8, 2018), *R & R adopted by* 2018 WL 4266038 (Sept. 5, 2018); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582 (NGG) (LB), 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011) (citing *Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir. 1999)), *R & R adopted by* 2011 WL 5402898 (Nov. 4, 2011); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (adopting R. & R.).

Although a complaint's allegations pertaining to liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Greyhound Exhibit Grp.*, 973 F.2d at 158. Rather, damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. An evidentiary presentation is required so that the court may ensure that there is a basis for the damages sought before entering judgment in the amount demanded. *Fustok*, 873 F.2d at 40. A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.

An evidentiary hearing is necessary here because of the conflict between the damages claimed in the Complaint and in the Trustees's motion for default judgment; and because Port Morris Corp. has an arguable defense to the amount of damages claimed. In the Complaint, the Trustees allege that Port Morris Corp. is liable for at least $2,407,760.60 in delinquent contributions *plus* liquidated damages, interest, and audit costs. (Compl. ¶¶ 25, 28–29). Yet in their motion for default judgment they seek only $304,135.36 *including* liquidated damages, interest, and audit costs. (Dkt.

16

Nos. 38-9 ¶ 1, Pls.' Mem. at 1, 11). The Trustees attempt to explain this huge discrepancy in the most conclusory fashion based on "evidence" Port Morris Corp. submitted that rebutted "many of the Funds auditors' initial findings." (Dkt. No. 37 at ¶ 9; *see also* Pls.' Mem. at 5 n.2). However, no substantive analysis is provided.[16] The Court is left to speculate as to whether any of Plaintiff's calculations are correct. What's more, Port Morris Corp. argues that the same evidence it submitted to the Trustees indicates that it actually *overpaid* its contributions by nearly $820,000. (Corp.'s Answer at 24–25 ¶¶ 74–80; Corp.'s Mem. at 13–14). Regardless of whether Port Morris Corp. can recover that alleged overpayment, it would be entitled to defend against the Trustees's underpayment claim by relying on evidence that it actually overpaid its required contributions. The Trustees do not argue otherwise. (*See generally* Pls.' Opp'n at 1–15). For this reason alone, the Trustees's request for a default judgment should be granted, if at all, only to the extent of liability, and not damages. Port Morris Corp. should be permitted to contest any damage award in a full-blown evidentiary hearing.

## IV. Port Morris LP's Partial Opposition

Port Morris LP "takes no position" on Port Morris Corp.'s motion to set aside entry of default. (LP's Mem. at 1; *see also* Dkt. No. 48 ¶ 4 ("[Port Morris LP] does not oppose" Port Morris Corp's motion to set aside.)). Instead, it seeks an order excluding Port Morris Corp.'s proposed third-party claim against Becker Glynn. (LP's Mem. at 1).

Rule 14 of the Federal Rules of Civil Procedure governs third-party practice and "permits a defending party to implead another "who is or may be liable to the third-party plaintiff for all or

---

[16] Rather, the Trustees's witness provides a cursory one-sentence explanation without citation to the "evidence" Port Morris Corp. provided. (Dkt. No. 37 at ¶ 9; *see also* Pls.' Mem. at 5 n.2). Moreover, the exhibits this witness provides are not explained in any fashion, leaving the Court to guess their import. (Dkt. No. 37 ¶¶ 7-8, Exhibits F-I). This is hardly sufficient to sustain the Trustees's burden to prove damages on a motion for default judgment without an evidentiary hearing.

part of the claim against it." FED. R. CIV. P. 14(a)(1); *see also Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 437 (2d Cir. 2000). "Timely motions for leave to implead non-parties should be freely granted to promote judicial efficiency, unless [doing] so would prejudice the plaintiff, unduly complicate the trial, or . . . foster an obviously unmeritorious claim, but the right to implead third parties is not automatic." *E.C. Contracting, Inc. v. D.F. Pray, Inc.*, No. 19-CV-6813 (FB) (VMS), 2021 WL 1152938, at *1 (E.D.N.Y. Mar. 26, 2021) (quoting *iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 74 (E.D.N.Y. 2011)) (quotation marks omitted) (adopting R. & R.). "Rather, impleader is only appropriate if the moving party demonstrates that its claim is "dependent on or derivative of the [plaintiff's] main claim." *Id.* (quoting *Doucette v. Vibe Records, Inc.*, 233 F.R.D. 117, 120 (E.D.N.Y. 2005)).

A claim is derivative of the plaintiff's main claim if "the third party's liability [is] in some way dependent upon the outcome of the main claim or the third party must be secondarily liable as a contributor." *Weider Health & Fitness v. Austex Oil Ltd.*, No. 17-CV-2089 (RMB) (OTW), 2018 WL 6625072, at *11 (S.D.N.Y. Sept. 30, 2018), *R & R adopted by* 2018 WL 5919521 (S.D.N.Y. Nov. 13, 2018). Common examples of derivative claims include, but are not limited to indemnity, contribution, and subrogation. *E.C. Contracting*, 2021 WL 1394145, at *4. "Ultimately, '[t]here is considerable discretion vested in the trial court in deciding whether to permit or strike a third-party complaint.'" *839 Cliffside*, 2016 WL 5372804, at *4 (quoting *Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566, 568 (S.D.N.Y. 1983)).

Port Morris Corp. has not carried its burden to establish that impleader is appropriate and would further the interest of judicial economy.[17] *See 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.*, No. 15-CV-4516 (SIL), 2016 WL 5372804, at *4 (E.D.N.Y. Sept. 26, 2016). It grossly oversimplifies the standard for impleading third-party defendants and has not established that its third party-claim against Becker Glynn is dependent on or derivative of the Trustees's main claims. (*See* Dkt. No. 63 at 4–5). Although there may be some overlapping facts, whether Port Morris Corp. is liable to the Trustees under the ERISA and LMRA has no bearing on whether Becker Glynn violated any rules or obligations to Port Morris Corp. in its representation of Port Morris LP. *See 839 Cliffside*, 2016 WL 5372804, at *5 (collecting cases) ("Because [defendant] does not claim that [third-party] is somehow liable for the claims asserted by [plaintiff], [defendant] fails to establish that its third-party claim is contingent on the main action."). Becker Glynn's hypothetical liability to Port Morris Corp. under the proposed third-party claim, is in no way contingent on the outcome of the primary action brought by the Trustees. The success or failure of Port Morris Corp.'s counterclaim against the Trustees, while not wholly unrelated to the third-party claim, would not directly impact any potential liability of Becker Glynn to Port Morris Corp.

Further, as the Trustees suggest, the third-party complaint is likely to overshadow the ERISA collection action that they brought. (Pls.' Opp'n at 16). Port Morris Corp. has not persuaded the Court otherwise. I make no observation of whether a separate suit by Port Morris Corp. against

---

[17] Upon determination that a third-party complaint would be appropriate and foster the interest of judicial economy, the factors to be considered in determining whether to grant leave to implead a third-party defendant are: (i) whether the movant deliberately delayed or was derelict in filing the motion; (ii) whether impleading would unduly delay or complicate the trial; (iii) whether impleading would prejudice the third-party defendant; and (iv) whether the third-party complaint states a claim upon which relief can be granted. *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003) (citing *Rodolico v. Unisys Corp.*, 189 F.R.D. 245, 249 (E.D.N.Y. 1999)).

19

Becker Glynn is likely to prevail. It would not serve judicial efficiency to address that issue in this action.

Accordingly, I respectfully recommend that the Court grant Port Morris LP's motion to the extent that it requests an order that Port Morris Corp. bring its claims against Becker Glynn in a separate action, if at all.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Port Morris Corp.'s motion to vacate entry of default be granted, and consequently that the Trustees's motion for default judgment be denied. I also respectfully recommend that Port Morris Corp.'s third-party claims against Becker Glynn be excluded from this action.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric N. Vitaliano within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

**/s/ Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: June 7, 2021
      Brooklyn, NY